**INMATE NAME:** Charles Gregg-El

**PRISONER NO.:** 1001517

**PLACE OF CONFINEMENT:** River North Correctional Center
329 Dell Brook Lane
Independence, Virginia 24348

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 04 2016

JULIA G. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Charles Gregg-El #1001517,
        **Plaintiff**
v.                              **CIVIL ACTION NO.:** 7:16cv00038

"John Doe"[1], Health Services Director
Virginia Department of Corrections, *et al.*,

v.

Mr. Whited, RNCB; R.Sandifer, Institutional Ombudsman;
J. Kiser, Asst. Warden; R.C. Mathena, Warden; L. Fleming, Warden
Mr. D'Alessandro, Physician's Assistant
(Keen Mountain Correctional Center, P.O. Box 860, Oakwood, Virginia 24631)[2]

M. Stanford, RN; B.J. Ravizee, Institutional Ombudsman;
A. David Robinson, Warden
(Wallens Ridge State Prison, P.O. Box 759, Big Stone Gap, Virginia 24219)[3]

D. Wells, RNCA; B. Walls, Institutional Ombudsman;
J. F. Walrath, Warden; A. Mullins, Correctional Major
(River North Correctional Center, 329 Dell Brook Lane, Independence, Virginia 24348)

---

[1] The plaintiff is unaware of the named Health Services Director for the Virginia Department of Corrections when the actions complained of occurred and is listing the defendant as "John Doe" but seeks leave to amend the complaint when the actual Director at that time is revealed.

[2] At all pertinent times during this complaint, the defendants served in the capacity listed at this institution but may have since left employment or otherwise been transferred or reassigned.

[3] At all pertinent times during this complaint, the defendants served in the capacity listed at this institution but may have since left employment or otherwise been transferred or reassigned.

A. Have you begun other actions in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?
   Yes [ ]   No [X]

B. If your answer to "A" is Yes: You must describe any lawsuit, whether currently pending or closed, in the space below. If there is more than one lawsuit, you must describe each lawsuit on an additional sheet of paper, using the same outline, and attach hereto. N/A

C. At what institution did the events concerning your current complaint take place: This ongoing complaint has continuously occurred at the past (3) three institutions: Wallens Ridge State Prison; Keen Mountain Correctional Center; River North Correctional Center

D. Does the institution listed in "C" have a grievance procedure?
   Yes [X]   No [ ]

E. If your answer to "D" is Yes:
   1. Did you file a grievance based on this complaint?
      Yes [X]   No [ ]
   2. If "Yes":
      1. Where and when: Wallens Ridge State Prison; March 15, 2005
         What was the result: Denied
         Did you appeal? Yes [X] No [ ]
         Results of appeal: Upheld Denial
      2. Where and when: Keen Mountain Correctional Center; July 18, 2008
         What was the result: Denied
         Did you appeal? Yes [X] No [ ]
         Results of appeal: Upheld Denial
      3. Where and when: River North Correctional Center; August 03, 2014
         What was the result: Denied
         Did you appeal? Yes [X] No [ ]
         Results of appeal: Upheld Denial

2

F. If your answer to "D" is No: N/A
G. STATEMENT OF THE CLAIM

**Claim #1:** <u>The Virginia Department of Corrections, under the supervision of the above-named defendants, have provided inadequate medical assistance or otherwise denied adequate medical assistance/treatment.</u>
**Supporting Facts:** To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). Deliberate indifference may be shown by "intentionally denying or delaying medical care." <u>Estelle</u>, 429 U.S. at 104. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health,'" <u>Farmer</u>, 511 U.S. at 843 (quoting <u>Helling v. McKinney</u>, 509 U.S. 25 (1993)). The Court found that elementary principles exist to establish the government's obligation to provide medical care for those whom it is punishing by incarceration. "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id. In the worst cases, such a failure may actually produce physical "torture or a lingering death", <u>In re Kemmler</u>, 136 U.S. 436 (1890), the evils of most immediate concern to the drafters of the Amendment. In less serious cases such as this, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. See <u>Gregg v. Georgia</u>, 428 U.S. 153 (1976) (joint opinion). "The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that '(i)t is but just that the public be

3

required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'" Id. Under a recklessness standard, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk." Farmer, 511 U.S. at 844.

My complaint is that throughout a span exceeding 10 years while in the Department of Corrections, my knees have become useless after a reconstructive surgery I received in 2005. Despite being told by the surgeon that total knee replacement for my right knee was the best option and remedy to combat the degenerate arthritis, and osteosclorosis, I simply have consistently been denied because that surgery is considered "elective", however the remedy offered by the numerous institutions only served to increase pains in my knee, caused the conditions in my knee to deteriorate which in turn created excess weight on my left knee and caused the same condition that was treated for my right knee.

During my housing at Keen Mountain, my complaints were either ignored or simply disregarded. Moreover, the answer to many of my complaints were false. In August of 2007, I began my complaint by advising that I was unable to walk, that my knee would lock up causing dizziness and frequent passing out. This grievance was met with simply a refusal to log for investigation, but a directive to "do as instructed by M. Gilbert, RNCB". See Exhibit #1.

I again grieved, this time with a response given, except the response completely ignored my complaint. Defendant Kiser, while agreeing to my complaint, nonetheless said that I failed to offer "adequate proof" that I've been

4

denied treatment merely because the treatment, while not an appropriate treatment for this condition, was offered by the medical department. See Exhibit #2.

My next complaint was responded to with completely false statements. Defendant Mathena appears to simply repeat the prior response given by Defendant Kiser and does not elaborate as to why he is finding my grievance "unfounded". See Exhibit #3.

When again requesting information as to the reasoning behind the failure of the institution to provide adequate care, my complaint is again ignored without reply as a "request for service". See Exhibit #4.

My next complaint, specifically reminding the defendants that there was no "orthopedic surgeon" at the institution to offer a conflicting opinion as to what a surgeon has previously advised, was responded to again with answers that failed to address my issues. Defendant Fleming and Defendant D'Alessandro offered to provide "knee injections" which have previously been found to be unsuccessful as a remedy to my situation. See Exhibit #5.

Despite consistently agreeing that my knees are a serious problem which requires special consideration, see Exhibit #6, no remedy was ever found.

My transfer to Wallens Ridge State Prison was met with equal resistance to my needs and medical conditions. Much of the same complaints were made with many of the same responses. (See exhaustion of remedies and complaints, collective filed as Exhibits #7 through #9).

5

My transfer to River North Correctional Center was again met with equal resistance to my needs and medical conditions. See Exhibit #10 and #11. However differently was the institutions resistance to even allowing for crutches or other devices that would assist in walking or recovery even though those devices were offered and permitted in other situations and for other inmates. See Exhibits #12 and #13.

**Claim #2: <u>Defendant Mullins retaliated against plaintiff by falsifying documents which denied employment opportunity in response to medical complaints.</u>**

**Supporting Facts:** 42 U.S.C. §1983 provides a remedy for constitutional violations committed by state actors. In this case, the alleged constitutional violation is in the form of a claim that a state official retaliated against me for exercising my constitutional rights. It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. See <u>Crawford-El v. Britton</u>, 523 U.S. 574 (1998) (misdirection of personal belongings may state a claim of retaliation for exercise of First Amendment rights); <u>Board of County Comm'rs, Wabaunsee County v. Umbehr</u>, 518 U.S. 668 (1996) (nonrenewal of plaintiff's government contract in retaliation for his exercise of free speech is actionable); <u>Perry v. Sindermann</u>, 408 U.S. 593 (1972) ("[I]f the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited."); <u>Valot v. Southeast Local Sch. Dist. Bd. of Educ.</u>, 107 F.3d 1220, 1225 (6th Cir.) ("[A] claim of retaliation for exercise of the

6

constitutional right of access is cognizable under §1983."), cert. denied, 522 U.S. 861 (1997); Zilich v. Longo, 34 F.3d 359, 365 (6th Cir.1994) ("The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional ...."), cert. denied, 514 U.S. 1036 (1995). Therefore, for the wrongs alleged in this complaint, too, §1983 provides a remedy.

My complaint is that Defendant Mullins began falsifying documents to allege that I have been convicted of sexual offense charges, which she claimed prohibited me from obtaining institutional employment. This action was only committed in response to the many complaints made here at River North regarding the inadequate medical treatment I have been receiving.

Despite no record existing of such convictions, my grievance regarding this policy, as with other grievances filed by me while at this institution, has been ignored by Defendant Walls and returned to me without being logged or responded to. See Exhibit #14.

First Amendment rights, like many other rights, are circumscribed in the prison setting. In Turner v. Safley, 482 U.S. 78 (1987), for example, the Supreme Court held that "a prison regulation [that] impinges on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests." Similarly, Pell v. Procunier, 417 U.S. 817 (1974), holds that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."

Thus, review of such regulations offers a considerable degree of deference to the prison authorities, while still retaining ultimate judicial authority to evaluate

7

the constitutional reasonableness of the regulation. See <u>Turner</u>, 482 U.S. at 89-91 (rejecting strict scrutiny and applying a four-factor "reasonableness" test to prison regulations). The role of the judiciary requires weighing the interests of the prison as an institution (in such matters as security and effective operation) with the constitutional rights retained by the inmates.

I am here alleging a First Amendment retaliation claim. Specifically, I am claiming to have been punished for exercising my constitutionally protected right to seek adequate medical treatment through the use of the prison administrative grievances, partially grounded in the First Amendment's protection of the right to "petition the Government for a redress of grievances." <u>U.S. CONST. Amend. I</u>. It is well established that prisoners have a constitutional right of access to the courts. See <u>Lewis v. Casey</u>, 518 U.S. 343 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). Moreover, exhaustion requirements exist that prohibit action in the courts without first seeking resolution through the institutional grievance procedure. In a retaliation claim such as this, however, the harm suffered is the adverse consequence which flowed from my constitutionally protected action. Instead of being denied access to the courts, I have been penalized for actually exercising that right when attempting to exhaust the grievance procedures prior to filing a civil action. See <u>Hines v. Gomez</u>, 108 F.3d 265, 269 (9th Cir.1997) ("[T]he injury asserted is the retaliatory accusation's chilling effect on Hines' First Amendment rights.... We hold that Hines' failure to demonstrate a more substantial injury does not nullify his retaliation claim."), cert. denied, 524 U.S. 936 (1998); <u>Dixon v. Brown</u>, 38 F.3d 379, 379 (8th Cir.1994) ("Because the retaliatory filing of a

8

disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself."). As explained above, retaliation for the exercise of constitutional rights is itself a violation of the Constitution. As long as the injury is "distinct and palpable" rather than abstract, conjectural, or hypothetical, it is sufficient to confer standing. Id. The facts of this case indicate real rather than hypothetical injuries. If these injuries were inflicted in retaliation for constitutionally protected conduct as alleged, they are traceable to the unlawful conduct of the defendant, Mullins, and a damages remedy under §1983 would offer redress.

The first step in a retaliation claim is for this Court to determine whether I was engaged in protected conduct at all. Absent protected conduct, a plaintiff cannot establish a constitutional violation. See Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999). As previously argued, it is undisputed that I have been seeking effective treatment for my knee and have been vigorously exhausting all available remedies through the grievance procedures, including here at River North Correctional Center.

The second element of my case requires a showing that an adverse action was taken against me. It is my allegation that Defendant Mullins used her position as a major at River North to deny me an opportunity to gain prison employment by falsifying records and making false statements against me that both removes me from consideration of employment and endangers my safety concerning the false allegations made.

9

It is not necessarily true, however, that every action, no matter how small, is constitutionally cognizable. See <u>Ingraham v. Wright</u>, 430 U.S. 651 (1977) ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."). The term "adverse action" is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote. In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse.

In order to determine whether actions of lesser severity merit being deemed "adverse" for purposes of a retaliation claim, courts adopt the standard suggested by Judge Posner in <u>Bart v. Telford</u>, 677 F.2d 622, 625 (7th Cir.1982), that an adverse action is one that would "deter a person of ordinary firmness" from the exercise of the right at stake.

In a prior First Amendment retaliation case in the Sixth Circuit, a panel of that court incorporated the <u>Bart</u> standard in its definition of "adverse action." See <u>Bloch v. Ribar</u>, 156 F.3d 673, 678 (6th Cir.1998). <u>Bloch</u> applied the following three-part definition of retaliation: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." Id. Because the adverse action at issue--there, the public release by the local sheriff of shocking and extremely humiliating details about the plaintiff's rape in response to her criticisms in the local paper of his investigation--

10

was deemed sufficient to chill an individual of ordinary firmness from speaking to the press about such matters, the plaintiffs met their initial burden and were allowed to proceed with the retaliation case.

In Bart itself, a public employee First Amendment retaliation case, Judge Posner acknowledged that "since there is no justification for harassing people for exercising their constitutional rights [the effect on freedom of speech] need not be great in order to be actionable." Bart, 677 F.2d at 625. A panel of the U.S. Court of Appeals for the D.C. Circuit, on its initial review of Crawford-El, approved the Bart standard as to the level of injury the prisoner had to show in that case and then remanded to the district court for repleading. See Crawford-El v. Britton, 951 F.2d 1314, 1322 (D.C.Cir.1991). When the case returned after remand, the en banc court commented with approval on the district court's application of a "sensible" standard: whether an official's acts "would chill or silence a 'person of ordinary firmness' from future First Amendment activities." Crawford-El v. Britton, 93 F.3d 813, 826 (D.C.Cir.1996) (quoting 844 F.Supp. 795, 801 (D.D.C.1994) (quoting Bart)). The Supreme Court left this standard undisturbed.

I am requesting this Court agree with the reasoning in those cases and conclude that it is the appropriate standard by which to determine what type of action is sufficiently adverse to be cognizable in this retaliation claim under §1983. Finally, the third element--a causal connection between the protected conduct and the adverse action--needs to be established by me to complete an affirmative case. Here the subjective motivation of the defendant is at issue. As discussed above,

11

Crawford-El disallows any type of "heightened pleading standard" to avoid this consequence.

Because I have no other means of obtaining financial stability aside from institutional employment, and because the institutional policy requires that I pre-pay any future costs for copies related to my complaints, the denial of an opportunity to be able to pay for copies, paperwork and other evidence of violations, not to mention afford the basic maintenance needs, serves only a purpose of attempting to prohibit me from grieving my case or "silencing me" on the issues being raised.

> **Relief Requested (check those remedies you seek):**
> XXX Award money damages in the amount of $200,000.00
>
> XXX Grant injunctive relief by removing defendant Mullins' authority to decide eligibility with regards to my application for prison employment.
> XXX Other: Provide the treatment needed to effectively repair the damage to my Right knee, including if necessary complete replacement and, provide the treatment needed to effectively repair the damage to my Left knee, due to the lack of care afforded to my Right knee.

**I understand that in a §1983 action the Court cannot change my sentence, release me from custody or restore good time. I understand I should file for a writ of habeas corpus if I desire this type of relief.**
_C.G._ (please initial)

**H. Places of incarceration (Please list the institution(s) at which you were incarcerated during the last 6 (six) months. If you were transferred during this period, list the date(s) of transfer. Provide an address for each institution.):**
River North Correctional Center, 329 Dell Brook Lane, Independence, VA. 24348
Keen Mountain Correctional Center, P.O. Box 860, Oakwood, Virginia 24631
Wallens Ridge State Prison, P.O. Box 759, Big Stone Gap, Virginia 24219

I. Consent to trial by a magistrate judge (The parties are advised of their right, pursuant to 28 U.S.C. §636(c), to have a U.S. Magistrate Judge preside over a trial, with appeal to the U.S. Court of Appeals for the Fourth Circuit. You may consent at any time; however, an early consent is encouraged.)

Do you consent to proceed to proceed before a U.S. Magistrate Judge?
Yes [X] No [ ]

Signed this 1st day of February, 2016,

*Charles A. Gregg-El*
Charles Gregg-El, Plaintiff Pro-Se

VERIFICATION:

I, Charles Gregg-El, state that I am the plaintiff in this action and I know the content of the above complaint; that it is true of my own knowledge, except as to those matters that are stated to be based on information and belief, and as to those matters, I believe them to be true. I further state that I believe the factual assertions are sufficient to support a claim of violation of constitutional rights. Further, I verify that I am aware of the provisions set forth in 28 U.S.C. §1915 that prohibit an inmate from filing a civil action or appeal, if the prisoner has, on three or more occasions, while incarcerated, brought an action or appeal in federal court that were dismissed on grounds that is was frivolous, malicious or failed to state a claim upon which relief may be granted, unless the prisoner is in imminent danger of serious physical injury. I understand that if this complaint is dismissed on any of the above grounds, I may be prohibited from filing any future actions without the pre-payment of filing fees.

Signed this 1st day of February, 2016,

*Charles A. Gregg-El*
Charles Gregg-El, Plaintiff Pro-Se

# CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of February, 2016, I, Charles Gregg-El, mailed a copy of the foregoing complaint under Civil Rights Act 42 U.S.C. §1983 to the Office of the Clerk for the U.S. District Court for the Western District of Virginia, 210 Franklin Road, SW, Roanoke, Virginia 24006 and that one (1) true and correct copy of the aforementioned document was sent to the Office of the Attorney General of Virginia, 900 East Main Street, Richmond, Virginia 23219, counsel for the defendants, and that this was done via United States Mail, by submitting said mail to the Prison Mailroom.

By: *Charles A. Gregg-El*
    Signature

Charles Gregg-El #1001517

River North Correctional Center

329 Dell Brook Lane

Independence, Virginia 24348