IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHARLES GREGG-EL, | ) | Civil Action No. 7:16cv00038 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| JOHN DOE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

    Charles Gregg-El, a Virginia inmate proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 naming numerous administrative and medical staff of the Virginia Department of Corrections ("VDOC"), Keen Mountain Correctional Center ("KMCC"), and River North Correctional Center ("RNCC") as defendants. Gregg-El alleges that defendants violated the First and Eighth Amendments of the United States Constitution by retaliating against him and being deliberately indifferent to a serious medical need for knee replacement surgery. Defendants Doe, Fleming, Kiser, Mathena, Mullins, Ravizee, Robinson, Sandifer, Walls, Walrath, and Whited (collectively, "correctional defendants") filed a motion for summary judgment. Defendants D'Alessandro, Stanford, and Wells (collectively, "medical defendants") filed a motion to dismiss. Gregg-El filed a brief (without evidence) to oppose the correctional defendants' motion for summary judgment, and he filed a verified brief with an affidavit to oppose the medical defendants' motion to dismiss.[1] Upon consideration of this action, I will dismiss numerous

---

[1] Gregg-El also filed a reply to the correctional defendants' answer that I had not authorized in accordance with Federal Rules of Civil Procedure 7(a)(7) and 12(a)(1)(C). Consequently, that reply does not constitute a pleading that is allowed under the Federal Rules of Civil Procedure or afforded liberal construction, and I do not consider it. *See* Fed. R. Civ. P. 7(a); *Jourdan v. Jabe*, 951 F.2d 108, 109-10 (6th Cir. 1991) (holding that a *pro se* litigant is not entitled to special consideration to excuse a failure to follow a straightforward procedural requirement that a lay person can comprehend as easily as a lawyer); *see also Sherrill v. Holder*, No. 12-00489, 2013 U.S. Dist. LEXIS 190373, at *1, 2013 WL 11316921, at *1 (D. Az. June 25, 2013) ("This Court did not grant Plaintiff leave to file a reply to Defendant's Answer. Further, the Court does not find any basis to permit Plaintiff to file a reply to the Defendant's Answer in

claims as barred by the statute of limitations, and I will grant Defendants' motions as to the remaining claims and defendants.

**I.**
**A.**

Gregg-El's grievances that are incorporated into the complaint describe the relevant medical issues better than the complaint itself. The grievances, which were filed over the past eleven years, reveal the following facts.

Gregg-El had reconstructive surgery on his right knee in January 2005 to treat arthritis, osteosclerosis, and another problem. The surgeon noted that the reconstructive surgery was a "temporary" fix and that the best remedy would be knee replacement surgery. Between the surgery and the filing of the instant action, Gregg-El complained of worsening right knee function and pain, and he tried to persuade prison officials and medical staff to authorize knee replacement surgery. No official had approved knee replacement surgery as medically necessary by the time Gregg-El commenced this civil action. Instead, medical staff had diagnosed and treated the related symptoms with non-surgical methods, including an X-ray, a physical aid, medications, exercises, injections, and both lower-bunk and lower-floor assignments.

**B.**

Gregg-El mostly complains about the medical care involving his knees while housed at WRSP and KMCC from approximately 2005 to 2013. The defendants named in relation to these complaints starting from more than a decade ago are VDOC Health Services Director John Doe; KMCC Wardens Mathena and Fleming; KMCC Assistant Warden Kiser; KMCC Grievance

---

this case. As such, Plaintiff's Response to Defendant's Answer is stricken from the record."). Nonetheless, Gregg-El is not prejudiced because "[i]f a responsive pleading is not required, an allegation is considered denied or avoided." Fed. R. Civ. P. 8(b)(6).

Coordinator Sandifor; KMCC staffer Whited; KMCC Physician Assistant ("PA") D'Alessandro; WRSP Warden Robinson; WRSP Grievance Coordinator Ravizee; and WRSP Nurse Stanford. Gregg-El was confined at RNCC as of November 14, 2013, and none of these particular defendants are alleged—either in the complaint or in administrative forms—to have had any involvement with Gregg-El for at least two years before he commenced this action.

C.

For the more recent claims, Gregg-El continues his allegations about staff's unwillingness to authorize knee replacement surgery. Gregg-El also alleges that Major Mullins retaliated against him for his administrative filings seeking that surgery. Major Mullins's alleged retaliatory act was inserting erroneous information in Gregg-El's inmate file to prevent him from obtaining a prison job.

Facts involving RNCC Warden Walrath are not found in either the complaint or administrative forms. Facts involving RNCC Nurse Wells, RNCC Grievance Coordinator Walls, and RNCC Major Mullins are similarly not developed in the complaint. Consequently, I look to Nurse Wells's, Walls's, and Major Mullins's responses to Gregg-El's administrative forms as support for Gregg-El's more timely legal claims.

1. *Nurse Wells*

On August 3, 2014, Gregg-El filed an informal complaint requesting knee replacement surgery to cure on-going pain and various dysfunctions in his right knee. Two days later, Nurse Wells responded, "The doctor has seen you in the past regarding your right knee. A total knee replacement is considered elective surgery and is not approved while in DOC. If you need to see the doctor again, please submit a [sick call] request."

More than a year later on August 16, 2015, Gregg-El filed another informal complaint. Gregg-El inquired when he would see the outside doctor recommended by the facility doctor in July 2015. Nurse Wells replied on August 26, 2015, noting that he had seen the outside doctor during that same day.

Gregg-El filed a third, relevant informal complaint on September 1, 2015, acknowledging that he was given a knee brace by the outside doctor but complaining that the brace was confiscated from him.[2] Nurse Wells responded on September 14, 2015, "The brace that was given to you at an outside orthopedics office contained large metal bands. Those are not allowed to be in your possession. The doctor here has sent a request to Richmond for the knee injections. We are awaiting approval."

    2. *Grievance Coordinator Walls*

Gregg-El alleges in the complaint that Walls ignored and returned several of his regular grievances without logging them for the Warden's review. The administrative record has four grievances that Walls rejected at intake and returned to Gregg-El.

Gregg-El filed a regular grievance related to his knee on August 7, 2014, complaining:

> I am not getting adequate medical treatment because I need total knee replacement and I am being told that I cannot get this surgery because the DOC disapprove of elective surgery. This is cruel and unusual punishment. Because to know I'm in pain all the time and to deny me . . . that would help with the pain and do nothing about is not adequate medical care. The doctor even tells me my knees are real bad and there is nothing he can do to help me with the pain. I want legal action taken on the people that are den[y]ing me adequate medical treatment for my knee, which is total knee replacement.

---

[2] Major Mullins avers that the brace "contained two large metal plates and was not allowed in a general population housing assignment for security reasons. The metal plates were not visible to the eye and could be removed and fashioned into a weapon. Canes and crutches are clearly visible to security staff."

4

Walls rejected the grievance at intake as a request for services for "want[ing] a knee replacement."[3]

Gregg-El filed a second, related grievance on August 28, 2015, complaining about the confiscation of the knee brace. On September 1, 2015, Walls rejected the grievance at intake as "different from the issue in the informal complaint."[4]

Gregg-El filed a third, related grievance on September 15, 2015, complaining again about the knee brace's confiscation although other inmates have canes, wheelchairs, and crutches. Gregg-El sought as his remedy "to have my . . . brace which I need medically[] [and] [t]o get adequate medical treatment." Walls rejected the grievance at intake as a request for medical services.[5]

Gregg-El filed a fourth, but unrelated, grievance on November 15, 2015. Instead of complaining about his knee, Gregg-El complained that he was unjustly denied a prison job due to staff's misinterpretation of VDOC Operating Procedure ("OP") 841.2. Gregg-El alleged that he does not have an institutional record of being a sex offender but was being denied a prison job on that basis. Walls rejected the grievance at intake as not affecting Gregg-El personally. Walls noted, "You must abide by RNCC policies and procedures. Guidelines set forth in RNCC orientation handbook. You have been at RNCC since 11/14/2013."[6]

3. *Major Mullins*

Gregg-El alleges in the complaint that Major Mullins "began falsifying documents to allege that [Gregg-El] [was] convicted of sexual offense charges, which she claimed prohibited

---

[3] This intake decision was upheld on appeal.
[4] It does not appear that this intake decision was appealed.
[5] This intake decision was upheld on appeal.
[6] This intake decision was upheld on appeal.

5

[him] from obtaining institutional employment." Gregg-El filed a request for service on October 21, 2015, to which Major Mullins responded. Major Mullins informed Gregg-El that he was found guilty in 2002 of, *inter alia*, the criminal act of indecent exposure and that he was also subsequently found guilty of institutional prison charges of indecent exposure, lewd or obscene acts, and threatening to commit/making sexual advances toward a non-offender. Major Mullins avers that RNCC policy stipulates that an inmate may not be assigned a job in the Support Building[7] if, *inter alia*, he has had any sex-related disciplinary convictions.

## II.

Because "[t]here is no federal statute of limitations for § 1983 claims, . . . the state limitations period which governs personal injury actions is applied." *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cit. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). In Virginia, the limitations period for personal injury actions is two years from "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Va. Code § 8.01-243(a); *Nasim v. Warden Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Gregg-El commenced this action no earlier than February 1, 2016, when he allegedly deposited the complaint in the prison mail system for mailing to this court. *See Houston v. Lack*, 487 U.S. 266, 275 (1988) (discussing the prison mailbox rule). Consequently, the claims that accrued before February 1, 2014, are barred by the statute of limitations.

The correctional defendants raised a statute of limitations defense in their answer, Gregg-El is proceeding as a pauper in accordance with 28 U.S.C. § 1915, and the limitations defense is

---

[7] The Support Building contains the offices of administrative staff.

Case 7:16-cv-00038-NKM-RSB Document 53 Filed 03/10/17 Page 6 of 13 Pageid#: 246

clear from the complaint and incorporated exhibits.[8]  Accordingly, I may consider a statute of limitations defense as to both the correctional and medical defendants.  *See, e.g.*, *Nasim*, 64 F.3d at 953–54.

Gregg-El's experiences at KMCC and WRSP began in 2005, long before he was transferred to RNCC in November 2013.  The grievances relied on in the complaint reveal that he understood the bases of his various claims arising in those prisons long before February 1, 2014.[9]  *See Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (recognizing a federal cause of action accrues when the plaintiff has a complete and present cause of action or when the plaintiff can file suit and obtain relief).  The complaint does not support finding any date of accrual after February 1, 2014, for any claim against VDOC Health Services Director John Doe; KMCC Wardens Mathena and Fleming; KMCC Assistant Warden Kiser; KMCC Grievance Coordinator Sandifor; KMCC staffer Whited; KMCC PA D'Alessandro; WRSP Warden Robinson; WRSP Grievance Coordinator Ravizee; or WRSP Nurse Stanford.  Accordingly, the claims against these defendants will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[10]  *See, e.g.*, *Nasim*, 64 F.3d at 955–56.

---

[8]  The medical defendants have not yet filed their answer on account of their motion to dismiss.  *See* Fed. R. Civ. P. 12(a)(4).

[9]  The timing of Gregg-El's administrative grievances has no bearing on when the federal action accrues, although that timing may affect the limitations for a civil action in state court.  *Cf.* Va. Code § 8.01-243.2.

[10]  Nevertheless, nothing about PA D'Alessandro's or Nurse Stanford's responses to Gregg-El's incorporated exhibits demonstrates their deliberate indifference.  *See* discussion *infra*. Section III.A.

7

## III.
### A.

Deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment and is actionable via § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Deliberate indifference means an official was personally aware of facts indicating a "excessive risk to an inmate's health or safety," actually recognized the existence of such risk, and disregarded or responded unreasonably to that risk. *Farmer*, 511 U.S. at 837. "[A]n inadvertent failure to provide adequate medical care" does not amount to the deliberate indifference required to prove a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105–06. Similarly, the deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment.'" *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)).

**B.**

The medical defendants filed a motion to dismiss arguing that, *inter alia*, Gregg-El fails to state an Eighth Amendment claim.[11] For the following reasons, the motion will be granted as to Nurse Wells, the remaining medical defendant.

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Gregg-El does not allege any facts involving Nurse Wells in the text of the complaint, but her name does appear on three exhibits in which she responds to Gregg-El's informal complaints.[12] Nurse Wells's first response tells Gregg-El to file a sick call request if he needs to

---

[11] The medical defendants also argue that Gregg-El failed to exhaust available administrative remedies. This argument presently fails because they did not file the controlling VDOC grievance policy. Consequently, I do not need to consider the attached affidavit from Warden Walrath and do not convert the motion to dismiss into a motion for summary judgment.

[12] The medical defendants and correctional defendants should note that a court must liberally construe a *pro se* complaint and "also consider documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits. . . ." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal quotation marks

talk to the doctor about knee replacement surgery. Her second response notes that Gregg-El was already seen by an outside doctor as ordered by the facility doctor. Her third response informed Gregg-El why unknown staff had confiscated the knee brace. Nurse Wells also explained that medical staff was waiting for the administrative approval of the doctor's alternative treatment.

Nothing in Nurse Wells's responses illustrates deliberate indifference. Notably, Gregg-El never alleges that Nurse Wells's act or omission caused the knee brace to be taken, and Nurse Wells's responses—even when viewed in a light most favorable to Gregg-El—do not describe how Nurse Wells disregarded an excessive risk to Gregg-El's health or otherwise responded unreasonably. Accordingly, the medical defendants' motion to dismiss will be granted as to Nurse Wells.

### C.

The remaining correctional defendants—RNCC Warden Walrath, RNCC Grievance Coordinator Walls, and RNCC Major Mullins—are entitled to summary judgment. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence

and citations omitted).

of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Notably, a plaintiff may not amend a complaint through argument in a brief opposing summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

Warden Walrath is entitled to summary judgment because there are no allegations of his involvement. Neither the complaint nor the administrative record reveals a personal act or omission by Warden Walrath, and Warden Walrath avers that he has not received a related regular grievance from Gregg-El. Indeed, Gregg-El's administrative record establishes that Grievance Coordinator Walls rejected the regular grievances and did not forward them to Warden Walrath.

Grievance Coordinator Walls is entitled to summary judgment because the four intake decisions do not implicate a cognizable claim under § 1983. Gregg-El does not have a constitutional right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994). Furthermore, an "after-the-fact denial of a grievance falls far short of establishing § 1983 liability." *DePaola v. Ray*, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.) (citing *Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006)). Moreover, Walls's intake decisions did not deny treatment, did not deliberately interfere with treatment, and did not tacitly authorize or be deliberately indifferent to

11

a medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. *See Miltier*, 896 F.2d at 854.

Major Mullins is entitled to summary judgment because Gregg-El fails to establish retaliation. To state a retaliation claim, an inmate must show that "each retaliatory act violate[d] some constitutional right of an inmate or constitute[d] punishment for the exercise of a constitutional right." *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). The inmate must also show that he "suffered some adversity in response to [his] exercise of protected rights" that was more than a *de minimis* inconvenience. *ACLU v. Wicomico Cnty.*, 999 F.2d 780, 785, 786 n.6 (4th Cir. 1993). The inmate must further demonstrate that the protected conduct was a "substantial" or "motivating factor" of the retaliation. *See, e.g.*, *Woods v. Edwards*, 51 F.3d 577, 580-81 (5th Cir. 1995). Some courts have interpreted this language to require prisoners to show that the defendant's acts did not advance legitimate penological objectives. *See, e.g.*, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *Cook v. Lehman*, 863 F. Supp. 207, 212 (E.D. Pa. 1994) (noting courts should defer to the official's decisions which are aimed at protecting internal security and order, so long as they are "reasonably related to legitimate penological interests" (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989))).

Gregg-El fails to establish that his exercise of a constitutional right was a substantial factor motivating the alleged retaliatory action or that he suffered more than a *de minimis* inconvenience.[13] Gregg-El acknowledges that he does not have a constitutional right to grievance procedures or to a prison job, and he fails to establish any link between the alleged

---

[13] Gregg-El asserts that he needs a prison job for money to afford "basic maintenance" and pay for copies of his legal documents, but these are *de minimis* inconveniences. The VDOC already provides life's basic necessities, and he fails to establish how copies are necessary to access courts.

12

retaliation and accessing a court.  Furthermore, Gregg-El fails to establish that the alleged retaliatory act of not receiving a prison job would deter a person of ordinary firmness from the exercise of a First Amendment right.  *See, e.g., Constantine v. Rectors and Visitors of George Mason Un.*, 411 F.3d 474, 499 (4th Cir. 2005).  Moreover, Gregg-El does not provide evidence to contradict Defendants' evidence that Gregg-El was convicted of disciplinary convictions for indecent exposure, lewd or obscene acts, and threatening to commit/making sexual advances toward a non-offender.  The enactment and enforcement of the relevant policy would further obvious legitimate penological goals of preserving institutional order and security by keeping felons with the penchant for lewd acts from accessing less-secure areas of a prison.[14]  Accordingly, Major Mullins is entitled to summary judgment.

## IV.

For the reasons stated, I will dismiss as untimely claims against defendants VDOC Health Services Director John Doe; KMCC Wardens Mathena and Fleming; KMCC Assistant Warden Kiser; KMCC Grievance Coordinator Sandifor; KMCC staffer Whited; KMCC PA D'Alessandro; WRSP Warden Robinson; WRSP Grievance Coordinator Ravizee; and WRSP Nurse Stanford pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).  I will grant the correctional defendants' and medical defendants' motions as to the remaining claims and defendants.

ENTER:  This 10th day of March, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[14]   Gregg-El has not presented a facial challenge to the relevant policy.  *See, e.g., Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (discussing an inmate's burden to disprove the validity of a prison regulation).

13